## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------
**ANGELA ROPER and RENEE JOHNSON,**
**for themselves and all others similarly**
**situated,**                                    :      **Case No. _____**
                              **Plaintiffs,**     :
            **v.**                                :      **COLLECTIVE / CLASS ACTION**
                                                  :
**VERIZON COMMUNICATIONS, INC. and**              :      **JURY TRIAL DEMANDED**
**CELLCO PARTNERSHIP d/b/a VERIZON**              :
**WIRELESS,**                                     :
                              **Defendants.**     :
-------------------------------------------------------

### CLASS AND COLLECTIVE ACTION COMPLAINT

Angela Roper and Renee Johnson ("Plaintiffs"), by and through their undersigned counsel, hereby make the following allegations against Verizon Communications, Inc. and Cellco Partnership d/b/a Verizon Wireless ("Defendants") concerning their acts upon actual knowledge and concerning all other matters upon information, belief and the investigation of their counsel:

### NATURE OF THE ACTION

1.      Plaintiffs bring this action to redress Defendants' violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq*. ("PMWA") and the Illinois Minimum Wage Law, 820 ILCS 105 *et seq*. ("IMWL") by knowingly suffering or permitting certain full-time, hourly employees to perform approximately 15 minutes of off-the-clock pre-shift work, approximately 30 minutes of off-the-clock meal break work and approximately 15 minutes of off-the-clock post-shift work each day without paying any wages for this work. [1]

---

[1] Plaintiffs presently expect that this case will include several similar job titles, including: B2B Sales Representative, Business Account Specialist, Business Customer Service Representative, Client Services Consultant, Client Services Specialist, Customer Care Representative, Sales Associate and Technical Customer Service Representative.  Plaintiffs reserve the right to revise this list as needed based on further investigation and discovery.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331.

3.      This Court has supplemental jurisdiction over Plaintiffs' Pennsylvania and Illinois claims under 28 U.S.C. § 1367, because these claims arise from the same occurrence or transaction as Plaintiffs' FLSA claim (i.e., Defendants' failure to pay overtime wages for pre- and post-shift work) and are so related to this claim as to form part of the same case or controversy.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because Plaintiff Roper resides in this District, worked for Defendants in this District and suffered the losses at issue in this District, because Defendants has significant business contacts in this District and engaged in the wrongful conduct at issue in this District and because actions and omissions giving rise to Plaintiff Roper's claims occurred in this District.

## PARTIES

5.      Angela Roper is an adult citizen of the Commonwealth of Pennsylvania who resides in Lehigh County PA.  Ms. Roper worked as a full-time, hourly, phone-based Sales Consultant for Verizon Communications, Inc. in Allentown, PA from January 2007 to November 2017.  Ms. Roper is personally familiar with, and was personally affected by, the policies and practices described in this Complaint.  Ms. Roper has completed and filed an opt-in consent form to join this litigation.  *See* Roper Consent Form (Exhibit A).

6.      Renee Johnson is an adult citizen of the State of Illinois who resides in Cook County IL.  Ms. Johnson worked as a full-time, hourly, phone-based Technical Customer Service Representative for Cellco Partnership d/b/a Verizon Wireless in Rolling Meadows, IL from August 2002 to October 2018.  Ms. Johnson is personally familiar with, and was personally affected by,

2

the policies and practices described in this Complaint.  Ms. Johnson has completed and filed an opt-in consent form to join this litigation.  *See* Johnson Consent Form (Exhibit A).

7.     Verizon Communications, Inc. ("Verizon") is a Delaware company with a corporate headquarters in New York, N.Y., an operations headquarters in Basking Ridge, N.J. and more than 150,000 employees worldwide.  *See* https://www.verizon.com/about/careers/we-are-global#featured-region-6753;  https://www.verizon.com/about/sites/default/files/Verizon_Fact_Sheet.pdf; http://www.verizon.com/about/our-company/overview.  Verizon designs, builds and operates telecommunications networks, information systems and mobile technologies and provides a wide array of customer help, information and support services relating to its various products and services from dozens of call centers and offices in more than 20 states.  Id.

8.     Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") is a wholly-owned subsidiary of Verizon with a corporate headquarters in Basking Ridge, N.J.  *See* https://www.verizon.com/_about/news/cellco-partnership-dba-verizon-wireless-verizon-wireless-capital-llc-partially-redeem -8500.  Verizon Wireless provides wireless, residential, and business telecommunications products and services to over 150 million subscribers in the United States.  *See* https://en.wikipedia.org/wiki/Verizon_Wireless;https://www.bloomberg.com/research/stocks/private/snapshot.asp? privcapId=3589977.

## BACKGROUND FACTS

9.     All full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless have similar jobs that include answering customer phone calls on Defendants' phone system, using Defendants' computer system to access databases and create work orders, following-up with employees in other departments about work orders and completing paperwork relating to their customer calls and work orders.

10.    All full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless receive common training with respect to their work and the common policies underlying Plaintiffs' claims.

11.    All full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless have a similar daily work schedule that includes eight work hours and a one-hour meal break.

12.    Defendants maintain a common "adherence" policy requiring all full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless to create daily time records that strictly follow their daily work schedule.  Under this policy, employees must log-in to Defendants' phone system within one minute of their scheduled shift start-time, log-out of Defendants' phone system within one minute of their scheduled meal break start-time, log-in to Defendants' phone system within one minute of their scheduled meal break end time and log-out of Defendants' phone system within one minute of their scheduled shift end-time every day. Employees who consistently follow this policy are considered to be "in adherence."  Employees who do not consistently follow this policy are considered "not in adherence," can have their daily wages docked and are subject to counselling and disciplinary action up to and including termination.

13.    Defendants maintain a common policy and practice providing that all full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless will be paid for all work hours tracked by Defendants' phone system which, because of the adherence policy, almost always winds up being the same as their scheduled work hours.

14.    Defendants maintain a common policy requiring all full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless to answer one customer call after another, from the minute their scheduled shift starts until their meal break begins and

from the minute their meal break ends until the minute their shift ends. Compliance with this policy is encouraged through the "adherence" policy, the threat of counselling and disciplinary action and the use of performance benchmarks that require all phone-based Customer Service and Sales employees for Verizon and Verizon Wireless to handle a large volume of calls.

15.    Defendants maintain a common policy prohibiting all full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless from placing outgoing calls on Defendants' phone system while they are on-the-clock, including outgoing calls to employees in other departments where they have sent work orders.

16.    Defendants maintain a common policy requiring all full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless to resolve their work orders and complete all related paperwork within the time-frame promised to the customer. Compliance with this policy is frustrated on a daily basis by the policies and practices referenced above that require these employees to spend every minute of their scheduled work day on customer calls, meet their performance benchmarks and refrain from making outgoing calls to employees in other departments while on-the-clock.

**UNPAID PRE-SHIFT WORK**

17.    Consistent with the policies and practices described above, and with the knowledge and approval of their supervisors, all full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless routinely spend approximately 15 minutes before their scheduled shift start-time each day performing job-related tasks that include: reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed.

18.     For approximately ten years, Ms. Roper arrived at her desk about 15 minutes before her scheduled shift start-time to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed.  Over the years, Ms. Roper has personally observed around 50 full-time, hourly, phone-based Verizon Sales employees arrive at their desks about 15 minutes before their scheduled shift start-times to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers – including her – about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed.

19.     For approximately sixteen years, Ms. Johnson arrived at her desk about 15 minutes before her scheduled shift start-time to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed.  Over the years, Ms. Johnson has personally observed dozens of full-time, hourly, phone-based Verizon Wireless Customer Service employees arrive at their desks about 15 minutes before their scheduled shift start-times to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers – including her – about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed.

20.     Plaintiffs' supervisors, through their regular observation of Plaintiffs, regular interactions with Plaintiffs and regular discussions with Plaintiffs, knew that Plaintiffs started working approximately 15 minutes before their scheduled shift start-time almost every day, but

never freed them from performing pre-shift work, required them to enter their pre-shift work in Defendants' timekeeping system, or caused them to be paid any wages for their pre-shift work.

21.     Full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless so regularly perform unpaid, off-the-clock pre-shift work with their supervisors' knowledge and approval that it has become a *de facto* part of their required job duties.

22.     If full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless do not spend approximately 15 minutes performing the tasks described above before the scheduled start of their shift each day, they cannot resolve their work orders, complete their required paperwork, or provide the customer services their jobs require, placing them at risk of counselling and disciplinary action up to and including termination.

23.     Defendants do not capture any full-time, hourly, phone-based Customer Service and Sales employees' pre-shift work in their timekeeping system, or pay these employees any wages for their pre-shift work.

## UNPAID MEAL BREAK WORK

24.     Consistent with the policies and practices described above, and with the knowledge and approval of their supervisors, full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless routinely spend approximately 30 minutes of their scheduled one-hour meal break on job-related tasks that include: reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed.

25.     For approximately ten years, Ms. Roper used about 30 minutes of her scheduled one-hour meal break to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers about work orders and other issues,

problems and procedures and create new work orders when requested work has not been completed. Over the years, Ms. Roper has personally observed around 50 full-time, hourly, phone-based Verizon Sales employees spend about 30 minutes of their scheduled one-hour meal break reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers – including her – about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed.

26.    For approximately sixteen years, Ms. Johnson used about 30 minutes of her scheduled one-hour meal break to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed. Over the years, Ms. Johnson has personally observed dozens of full-time, hourly, phone-based Verizon Wireless Customer Service employees spend about 30 minutes of their scheduled one-hour meal break reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers – including her – about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed.

27.    Plaintiffs' supervisors, through their regular observation of Plaintiffs, regular interactions with Plaintiffs and regular discussions with Plaintiffs, knew that Plaintiffs worked during about 30 minutes of their scheduled one-hour meal break almost every day, but never freed them from performing meal break work, required them to enter their meal break work in Defendants' timekeeping system, or caused them to be paid any wages for their meal break work.

28.     Full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless so regularly perform unpaid, off-the-clock meal break work with their supervisors' knowledge and approval that it has become a *de facto* part of their required job duties.

29.     If full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless do not spend approximately 30 minutes performing the tasks described above during their meal break each day, they will not be able to resolve their work orders, complete their required paperwork, or provide the customer services their jobs require, placing them at risk of counselling and disciplinary action up to and including termination.

30.     Defendants do not capture any full-time, hourly, phone-based Customer Service and Sales employees' meal break work in their timekeeping system, or pay these employees any wages for their meal break work.

## UNPAID POST-SHIFT WORK

31.     Consistent with the policies and practices described above, and with the knowledge and approval of their supervisors, full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless routinely spend approximately 15 minutes after their scheduled shift end-time each day performing job-related tasks that include: reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed.

32.     For approximately ten years, Ms. Roper remained at her desk about 15 minutes past her scheduled shift end-time to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed.  Over the years, Ms. Roper has personally observed around 50 full-time, hourly, phone-

based Verizon Customer Service and Sales employees in Pennsylvania stay at their desks about 15 minutes past their scheduled shift start-times to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers – including her – about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed.

33.    For approximately sixteen years, Ms. Johnson stayed at her desk about 15 minutes past her scheduled shift end-time to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed.  Over the years, Ms. Johnson has personally seen dozens of full-time, hourly, phone-based Verizon Customer Service and Sales employees in Illinois stay at their desks about 15 minutes past their scheduled shift start-times to review e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talk to supervisors and co-workers – including her – about work orders and other issues, problems and procedures and create new work orders when requested work has not been completed.

34.    Plaintiffs' supervisors, through their regular observation of Plaintiffs, regular interactions with Plaintiffs and regular discussions with Plaintiffs, knew that Plaintiffs stopped working about 15 minutes after their scheduled shift end-time almost every day, but never freed them from performing post-shift work, required them to enter their post-shift work in Defendants' timekeeping system, or caused them to be paid any wages for their post-shift work.

35.    Full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless so regularly perform unpaid, off-the-clock post-shift work with their supervisors' knowledge and approval that it has become a *de facto* part of their required job duties.

36.     If full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless do not spend approximately 15 minutes performing the tasks described above after the scheduled end of their shift each day, they will not be able to resolve their work orders, complete their required paperwork, or provide the customer services their jobs require, placing them at risk of counselling and disciplinary action up to and including termination.

37.     Defendants do not capture any full-time, hourly, phone-based Customer Service and Sales employees' post-shift work in their timekeeping system, or pay these employees any wages for their post-shift work.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

38.     Plaintiffs bring their FLSA claim as a collective action pursuant to 29 U.S.C. §216(b) for all full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless who have worked in any week during the maximum limitations period (the "FLSA Collective").

39.     Plaintiffs belong to the FLSA Collective, because they worked as full-time, hourly, phone-based Customer Service and Sales employees for Verizon and Verizon Wireless during the relevant period.

40.     Although Plaintiffs and the FLSA Collective members worked in different locations and in different states, this action may be properly maintained as a collective action because, among other things:

        a.      the FLSA Collective members had the same employer;

        b.      the FLSA Collective members had similar job duties;

        c.      the FLSA Collective members worked under similar terms and conditions of employment;

        d.      the FLSA Collective members were governed by similar timekeeping policies, practices and systems;

11

e.      the FLSA Collective members were governed by similar compensation policies, practices and systems;

f.      the FLSA Collective members were governed by similar policies, practices and systems concerning work hours, pre-shift work, meal breaks, post-shift work, overtime hours and overtime wages;

g.      the FLSA Collective members received similar training with respect to their work and Defendants' policies; and

h.      the FLSA Collective members were required to meet similar performance benchmarks.

41.     Plaintiffs and the FLSA Collective members do not meet any test for exemption under the FLSA.

42.     Plaintiffs estimate that the FLSA Collective, including both current and former employees over the relevant period, will include at least several thousand members.  The precise number of collective group members should be readily available from Defendants' personnel, scheduling, time and payroll records.

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

43.     Ms. Roper brings her PMWA claim on an opt-out, class action basis pursuant to Fed. R. Civ. P. 23 for all residents of Pennsylvania who have worked as a full-time, hourly, phone-based Customer Service and Sales employees for Verizon without being paid all overtime wages owed for their off-the-clock pre-shift, meal break and post-shift work in any workweek during the past three years (the "Pennsylvania Class").  Plaintiffs reserve the right to amend this definition as necessary.

44.     Ms. Roper is a member of the Pennsylvania Class because she is a Pennsylvania resident who worked as a full-time, hourly, phone-based Verizon Sales employee during the relevant period without being paid all of the overtime wages owed for her off-the-clock pre-shift, meal break and post-shift work.

45.    Ms. Roper's PMWA claim is appropriate for class treatment because the Pennsylvania Class satisfies the requirements of Fed. R. Civ. P. 23.

46.    The Pennsylvania Class is so numerous that joinder of all its members would be impracticable.  Defendants has at least several hundred employees who fit the Pennsylvania Class definition, meaning that joining all of their claims would be impracticable.

47.    Ms. Roper's claims are typical of the claims belonging to Pennsylvania Class members.  Ms. Roper is similarly-situated to the Pennsylvania Class members because she worked for Defendants under the common policies and procedures identified above, and was denied legally-required wages for her pre-shift, meal break and post-shift work as a result of Defendants' common course of wrongful conduct.

48.    There are material questions of law or fact common to the Pennsylvania Class members because, as discussed throughout this filing, Defendants engaged in a common course of conduct that violated the Pennsylvania Class members' legal rights.  The legality of Defendants' policies will be demonstrated by applying generally applicable legal principles to common evidence.  Any individual questions Ms. Roper's claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

      a.    whether Ms. Roper and the Pennsylvania Class members have been subjected to materially-identical timekeeping and compensation policies;

      b.    whether Defendants maintains policies or procedures to keep accurate, contemporaneous records of the hours worked by Ms. Roper and the Pennsylvania Class members or, in fact, accurately tracked the Pennsylvania Class members work time;

      c.    whether Defendants has allowed Ms. Roper and the Pennsylvania Class members to spend about 15 minutes before their scheduled shift start-time each day reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed;

d.      whether Defendants has allowed Ms. Roper and the Pennsylvania Class members to spend about 30 minutes during their meal break each day reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed;

e.      whether Defendants has allowed Ms. Roper and the Pennsylvania Class members to spend about 15 minutes after their scheduled shift end-times reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed;

f.      Whether the Pennsylvania Class members were properly paid for all hours they actually worked;

g.      whether Defendants denied Ms. Roper and the Pennsylvania Class members overtime premium wages owed under the PMWA; and

h.      whether Defendants should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

49.      Ms. Roper will fairly and adequately assert and protect the interests of the Pennsylvania Class because: there is no apparent conflict of interest between Ms. Roper and the Pennsylvania Class; Ms. Roper's counsel have successfully prosecuted many complex class actions, including state-law wage and hour class actions, and will adequately prosecute these claims; and Ms. Roper has secured adequate financial resources to assure that the interests of the Pennsylvania Class will not be harmed because her counsel have agreed to advance the costs and expenses of litigation on the Class' behalf contingent upon the outcome of this litigation consistent with Pa. R. Prof. Conduct 1.8(e)(1).

50.      Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy because issues common to the Pennsylvania Class members predominate over any questions affecting only individual members; no difficulties are likely to be encountered in the management of this litigation as a class action;

14

and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims.

51.      Allowing Ms. Roper's PMWA claim to proceed as a class action will be superior to requiring the individual adjudication of each Pennsylvania Class member's claim, since requiring hundreds of hourly-paid employees to file and litigate individual wage claims will place an undue burden on the Pennsylvania Class members, Defendants and the Courts.  Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually.  Moreover, as the damages suffered by each Pennsylvania Class member are relatively small, the expenses and burdens associated with individual litigation would make it prohibitively impractical for them to bring individual claims. Further, the presentation of separate actions by individual Pennsylvania Class members could create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of the Pennsylvania Class members to protect their interests.

52.      Allowing Ms. Roper's claims to proceed as a class action is also appropriate because Pennsylvania wage laws expressly permit private class action lawsuits to recover unpaid wages.

## ILLINOIS CLASS ACTION ALLEGATIONS

53.      Ms. Johnson brings her IMWL claim on an opt-out, class action basis pursuant to Fed. R. Civ. P. 23 for all residents of Illinois who have worked as a full-time, hourly, phone-based Customer Service and Sales employees for Verizon Wireless without being paid all overtime wages owed for their off-the-clock pre-shift, meal break and post-shift work in any workweek

during the past three years (the "Illinois Class"). Plaintiffs reserve the right to amend this definition as necessary.

54.    Ms. Johnson is a member of the Illinois Class because she is an Illinois resident who worked as a full-time, hourly, phone-based Verizon Wireless Customer Service employee during the relevant period without being paid all of the overtime wages owed for her off-the-clock pre-shift, meal break and post-shift work.

55.    Ms. Johnson's IMWL claim is appropriate for class treatment because the Illinois Class satisfies the requirements of Fed. R. Civ. P. 23.

56.    The Illinois Class is so numerous that joinder of all its members would be impracticable. Defendants has at least several hundred employees who fit the Illinois Class definition, meaning that joining all of their claims would be impracticable.

57.    Ms. Johnson's claims are typical of the claims belonging to Illinois Class members. Ms. Roper is similarly-situated to the Illinois Class members because she worked for Defendants under the common policies and procedures identified above, and was denied legally-required wages for her pre-shift, meal break and post-shift work as a result of Defendants' common course of wrongful conduct.

58.    There are material questions of law or fact common to the Illinois Class members because, as discussed throughout this filing, Defendants engaged in a common course of conduct that violated the Illinois Class members' legal rights. The legality of Defendants' policies will be demonstrated by applying generally applicable legal principles to common evidence. Any individual questions Ms. Johnson's claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

        a.    whether Ms. Johnson and the Illinois Class members have been
        subjected to materially-identical timekeeping and compensation policies;

16

b.      whether Defendants maintains policies or procedures to keep accurate, contemporaneous records of the hours worked by Ms. Johnson and the Illinois Class members or, in fact, accurately tracked the Illinois Class members work time;

c.      whether Defendants has allowed Ms. Johnson and the Illinois Class members to spend about 15 minutes before their scheduled shift start-time each day reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed;

d.      whether Defendants has allowed Ms. Johnson and the Illinois Class members to spend about 30 minutes during their meal break each day reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed;

e.      whether Defendants has allowed Ms. Johnson and the Illinois Class members to spend about 15 minutes after their scheduled shift end-times reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails, talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work has not been completed;

f.      Whether the Illinois Class members were properly paid for all hours they actually worked;

g.      whether Defendants denied Ms. Johnson and the Illinois Class members overtime premium wages owed under the PMWA; and

h.      whether Defendants should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

59.     Ms. Johnson will fairly and adequately assert and protect the interests of the Illinois Class because: there is no apparent conflict of interest between Ms. Johnson and the Illinois Class; Ms. Johnson's counsel have successfully prosecuted many complex class actions, including state-law wage and hour class actions, and will adequately prosecute these claims; and Ms. Johnson has secured adequate financial resources to assure that the interests of the Illinois Class will not be harmed because her counsel have agreed to advance the costs and expenses of litigation on the

17

Class' behalf contingent upon the outcome of this litigation consistent with Ill. R. Prof. Conduct 1.8(e)(1).

60.     Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy because issues common to the Illinois Class members predominate over any questions affecting only individual members; no difficulties are likely to be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims.

61.     Allowing Ms. Johnson's IMWL claim to proceed as a class action will be superior to requiring the individual adjudication of each Illinois Class member's claim, since requiring hundreds of hourly-paid employees to file and litigate individual wage claims will place an undue burden on the Illinois Class members, Defendants and the Courts.  Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually.  Moreover, as the damages suffered by each Illinois Class member are relatively small, the expenses and burdens associated with individual litigation would make it prohibitively impractical for them to bring individual claims.  Further, the presentation of separate actions by individual Illinois Class members could create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of the Illinois Class members to protect their interests.

62.     Allowing Ms. Johnson's claims to proceed as a class action is also appropriate because Illinois wage laws expressly permit private class action lawsuits to recover unpaid wages.

## COUNT I
## VIOLATION OF THE FLSA
## (For The FLSA Collective)

63.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

64.     Defendants are "employers" as defined by 29 U.S.C. § 203(d).

65.     Plaintiffs and the FLSA Collective members are "employees" as defined by 29 U.S.C. § 203(e)(1).

66.     The wages Defendants paid to Plaintiffs and the FLSA Collective members are "wages" as defined by 29 U.S.C. § 203(m).

67.     Defendants are an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

68.     Plaintiffs and the FLSA Collective members are similarly situated individuals within the meaning of 29 U.S.C. §216(b).

69.     29 U.S.C. § 207(a)(1) states that an employee must be paid an overtime premium rate, equal to at least 1½ times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

70.     29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce an employer's failure to comply with its requirements.

71.     Throughout the relevant period, Defendants were obligated to comply with the FLSA's requirements, Plaintiffs and the FLSA Collective members were covered employees entitled to the FLSA's protections, and Plaintiffs and the FLSA Collective members were not exempt from receiving wages required by the FLSA for any reason.

72.   Defendants knowingly violated the FLSA by failing to make or maintain an accurate, contemporaneous record of the pre-shift, meal break and post-shift work Plaintiffs and the FLSA Collective members regularly performed.

73.   Defendants knowingly violated the FLSA by regularly allowing Plaintiffs and the FLSA Collective members to perform about one hour of off-the-clock pre-shift, meal break and post-shift work each day.

74.   Defendants knowingly violated the FLSA by regularly failing to pay Plaintiffs and the FLSA Collective members any wages for their overtime-eligible pre-shift, meal break and post-shift work.

75.   Plaintiffs and the FLSA Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for overtime work they actually performed from which Defendants derived a direct and substantial benefit.

76.   By knowingly maintaining common policies, practices, procedures and systems that did not permit Plaintiffs and the FLSA Collective members to accurately record all their pre-shift, meal break and post-shift time, Defendants acted with reckless disregard of clearly applicable FLSA provisions.

77.   By knowingly failing to pay Plaintiffs and the FLSA Collective members all wages owed for the overtime-eligible work they actually performed, Defendants acted with reckless disregard of clearly applicable FLSA provisions.

78.   Defendants have no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiffs and the FLSA Collective members all wages mandated by the FLSA.

## COUNT II
## VIOLATION OF THE PMWA
## <u>(for the Pennsylvania Class)</u>

79.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

80.     Defendants are covered employers required to comply with the PMWA's mandates.

81.     Ms. Roper is seeking to recover "wages" as that term is defined by the PMWA.

82.     Ms. Roper and the Pennsylvania Class are employees entitled to the PMWA's protections, and, during the relevant period, were not exempt from receiving wages payable under the PMWA or its enabling Regulations for any reason.

83.     PMWA Section 4(c) requires employers to pay their employees overtime compensation of "not less than one and one-half times the employee's regular rate" for all hours worked over 40 in a given workweek.  *See* 43 P.S. § 333.104(c).

84.     Under the PMWA, overtime is calculated based on the number of hours worked in a "workweek", defined in controlling regulations as "a period of 7 consecutive days."  *See* 34 Pa. Code § 231.42.

85.     Throughout the relevant period, PMWA Section 8 required Defendants to "keep a true and accurate record of the hours worked by each employee and the wages paid to each."  *See* 43 P.S. § 333.108.

86.     The PMWA provides that "any agreement between the employer and the worker" does not serve as a defense to civil actions brought to recover wages owed under the Act.

87.     Defendants knowingly violated the PMWA by failing to make or maintain an accurate, contemporaneous record of the pre-shift, meal break and post-shift work Plaintiffs and the Pennsylvania Class members regularly performed.

88.    Defendants knowingly violated the PMWA by regularly allowing Plaintiffs and the Pennsylvania Class members to perform about one hour of off-the-clock pre-shift, meal break and post-shift work each day.

89.    Defendants knowingly violated the PMWA by regularly failing to pay Plaintiffs and the Pennsylvania Class members any wages for their overtime-eligible pre-shift, meal break and post-shift work.

90.    By engaging in this conduct, Defendants acted with willful and/or reckless disregard for Ms. Roper's and the Pennsylvania Class members' rights under the PMWA.

91.    There is no language in the PMWA, no exception to the PMWA or its enabling Regulations, or any applicable provision elsewhere in Pennsylvania law that permits Defendants to avoid paying Ms. Roper and the Pennsylvania Class members for their overtime work, so Defendants have no good faith justification or defense for failing to pay Ms. Roper and the Pennsylvania Class members all wages mandated by the PMWA.

92.    Ms. Roper and the Pennsylvania Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime premium wages owed for overtime-eligible work they performed and from which Defendants derived a direct and substantial benefit.

**COUNT III**
**VIOLATION OF THE IMWL**
**<u>(for the Illinois Class)</u>**

93.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

94.    Defendants are covered employers required to comply with the IMWL's mandates.

95.    Ms. Johnson is seeking to recover "wages" as that term is defined by the IMWL.

96.    Ms. Johnson and the Illinois Class are employees entitled to the IMWL's

22

protections, and, during the relevant period, were not exempt from receiving wages payable under the IMWL for any reason.

97.    IMWL Section 4(a) requires employers to pay an employee overtime compensation of "not less than 1½ times the regular rate at which he is employed" for all hours worked over 40 in a given workweek.  *See* 820 ILCS § 105(4a).

98.    Under the IMWL, overtime is calculated based on the number of hours worked in a "workweek."  *See* 820 ILCS § 105(4a).

99.    Throughout the relevant period, IMWL Section 8 required Defendants to keep "true and accurate records of… the rate of pay, and the amount paid each pay period to each employee [and] the hours worked each day in each work week by each employee…."  *See* 820 ILCS § 105(8).

100.    The IMWL provides that any "contract, agreement or understanding for or in relation to such unreasonable and oppressive wage for any employment covered by this Act is void."  *See* 820 ILCS § 105(2).

101.    Defendants knowingly violated the IMWL by failing to make or maintain an accurate, contemporaneous record of the pre-shift, meal break and post-shift work Plaintiffs and the Illinois Class members regularly performed.

102.    Defendants knowingly violated the IMWL by regularly allowing Plaintiffs and the Illinois Class members to perform about one hour of off-the-clock pre-shift, meal break and post-shift work each day.

103.    Defendants knowingly violated the IMWL by regularly failing to pay Plaintiffs and the Illinois Class members any wages for their overtime-eligible pre-shift, meal break and post-shift work.

104.    By engaging in this conduct, Defendants acted with willful and/or reckless disregard for Ms. Johnson's and the Illinois Class members' rights under the IMWL.

23

105.    There is no language in the IMWL, no exception to the IMWL, or any applicable provision elsewhere in Illinois law that permits Defendants to avoid paying Ms. Johnson and the Illinois Class members for their overtime work, so Defendants have no good faith justification or defense for Defendants' failure to pay Ms. Johnson and the Illinois Class members all wages mandated by the IMWL.

106.    Ms. Johnson and the Illinois Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime premium wages owed for overtime-eligible work they performed and from which Defendants derived a direct and substantial benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for an Order:

a.    Authorizing this matter to proceed as an FLSA Collective action with respect to Count I;

b.    Certifying this matter to proceed as a R.23 class action with respect to Counts II and III;

c.    Appointing Stephan Zouras LLP to serve as Class Counsel;

d.    Requiring Defendants to provide the names and current (or best known) mailing and e-mail addresses of all FLSA Collective members;

e.    Authorizing Class Counsel to issue a notice informing the FLSA class members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

f.    Finding that Defendants willfully violated the applicable provisions of the FLSA by failing to pay all required overtime wages to Plaintiffs and the FLSA Collective members;

g.    Finding that Defendants willfully violated the applicable provisions of the PMWA by failing to pay all required wages to Ms. Roper and the Pennsylvania Class members;

h.    Finding that Defendants willfully violated the applicable provisions of the IMWL by failing to pay all required wages to Ms. Johnson and the Illinois Class members;

24

       i.       Granting judgment in favor of Plaintiffs and the FLSA Collective members on Count I;

       j.       Granting judgment in favor of Ms. Roper and the Pennsylvania Class members on Count II;

       k.       Granting judgment in favor of Ms. Johnson and the Illinois Class members on Count III;

       l.       Awarding all available compensatory damages in an amount to be determined;

       m.       Awarding all available liquidated damages in an amount to be determined;

       n.       Awarding pre-judgment interest on all compensatory damages due;

       o.       Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

       p.       Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

       q.       Awarding any further relief the Court deems just, necessary and proper;

       r.       Granting leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

       s.       Maintaining jurisdiction over this action to ensure Defendants' compliance with the foregoing.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial in the above-captioned matter.

Respectfully submitted,

Dated: December 7, 2018       */s/ David J. Cohen*
       David J. Cohen
       STEPHAN ZOURAS, LLP
       604 Spruce Street
       Philadelphia, PA  19106
       (215) 873-4836
       dcohen@stephanzouras.com

James B. Zouras (*pro hac* motion forthcoming)
Ryan F. Stephan (*pro hac* motion forthcoming)
STEPHAN ZOURAS, LLP
100 North Riverside, Suite 2150
Chicago, IL  60606
(312) 233-1550
jzouras@stephanzouras.com
rstephan@stephanzouras.com

*Attorneys for Plaintiffs and the Putative FLSA
Collective, Pennsylvania Class and Illinois Class*